CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JAMES S. THREATT (Bar No. 325317)
(E-Mail: Jimmy_Threatt@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JESSICA ELIZABETH TRAPP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-CR-00851-CV |
| Plaintiff, | |
| v. | **DEFENDANT'S SUPPLEMENTAL FILING REGARDING JURY INSTRUCTIONS** |
| JESSICA ELIZABETH TRAPP, | |
| Defendant. | |

Defendant Jessica Trapp, through counsel, hereby submits a supplemental filing regarding: (1) the defense request for a spoliation instruction; (2) the government's request for a definition of bodily injury; and (3) to re-iterate its prior (and apparently uncontested) request for a definition of unlawful force.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 23, 2026          By  /s/ James S. Threatt

Gabriela Rivera
James S. Threatt
Deputy Federal Public Defender
Attorney for Jessica Elizabeth Trapp

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    A Spoliation Instruction is Appropriate.**

Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.  We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).  In addition to the government's obligations to disclose favorable or impeachment evidence under *Brady* and *Giglio*, *Trombetta* held that to protect a defendant's right to present a complete defense, when the government fails to preserve evidence, due process is violated if the "unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (citing Trombetta, 467 U.S. at 489) (internal quotations omitted).  Unavailable evidence that the government fails to preserve is categorized in two ways: (1) materially exculpatory evidence and (2) potentially useful evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

The Supreme Court has said that "when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012).  "Potentially useful evidence," on the other hand, is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015) (citing *Youngblood*, 488 U.S. at 57).  The government's failure to preserve evidence that was potentially useful—as opposed to materially exculpatory—must have been done in bad faith in order to violate due process. *See Youngblood*, 488 U.S. at 57–58.

To establish a due process violation, a defendant must also show a "lack of reasonably available comparable evidence." *Zaragoza-Moreira*, 780 F.3d at 981.

During her *Mirandized* interview from the day of the incident, Ms. Trapp was shown video footage of the alleged assault. She told the officers that their video only showed what occurred on the first floor of the courthouse, and—as was testified to by Special Agent Urbaez at trial—that they needed to obtain and/or preserve the video footage from the fifth floor. As SA Urbaez further acknowledged, the officers told her in that interview they had *already* preserved video from the fifth floor as well. That was a lie. Despite repeated requests for discovery from defense counsel, the government has never produced any video footage from the fifth floor of Roybal.

The missing footage was confirmed by SA Urbaez at trial when he testified, when called on direct by the defense despite being the government's case agent, that he never actually looked for security footage from the fifth floor despite Ms. Trapp's repeated requests, that to his knowledge no person looked for said footage, and that there is presently no footage that was preserved. The only basis for the assertion that the fifth floor cameras are incapable of recording footage is a report dated April 9, 2026—more than six months after the events in question—written by SA Urbaez in which he relays a conversation with a United States Deputy Marshal, who himself does not appear to have personal knowledge of the functionality of the fifth floor's cameras generally or whether any footage was recorded of the incidents in question. That report simply has no evidentiary value whatsoever (and was not admitted into evidence).

This failure is aggravated by the fact that the government's sole witness was aware of different video evidence from the fifth floor. Despite meeting with this witness at least seven times, the government never even learned of the existence of that video, let alone obtained it and produced it to the defense.[1]

---

[1] The defense does not have real time transcripts but is basing the above summary on counsel's notes and memories of the testimony.

Therefore, the defense requests that the Court issue an adverse inference jury instruction. *See United States v. Sivilla*, 714 F.3d. 1168, 1173 (9th Cir. 2013) (remanding for remedial jury instruction where defense was that defendant was a "blind mule" and did not know that drugs were contained in a Jeep, but government sold car before the defense could assess whether there were secret compartments in Jeep); *United States v. John*, 683 F. App'x 589, 593 (9th Cir. 2017) (unpublished) ("A defendant may be entitled to an adverse inference instruction even if the government did not act in bad faith, but only when the quality of the government's conduct was poor and the prejudice to the defendant was significant.").

The Ninth Circuit Model Instruction No. § 3.19 (Lost or Destroyed Evidence) as tailored to this case, would read as follows:

> If you find that the government intentionally destroyed or failed to preserve surveillance footage from the fifth floor of the Roybal Federal Courthouse that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

Such an instruction is appropriate in this case, especially given the affirmative steps the government took to preserve surveillance footage from the first floor and given the notice provided by Ms. Trapp on the day of the incident that a substantial portion of the relevant events occurred on the fifth floor.

**B.    The Term Bodily Injury Need Not Be Defined for the Jury.**

As the Court has noted at prior hearings, the Ninth Circuit does not have a Model Jury Instruction on the term bodily injury. Consistent with that position stakes out by the Ninth Circuit Jury Instructions Committee, the Circuit itself has affirmed decisions by district courts not to give a definition of "bodily injury" or other similar phrasing because such language, on its own, is easily understood by laypeople and non-lawyers. For example, in *United States v. Valencia-Cortez*, 769 F. App'x 419 (9th Cir. 2019), the Circuit held as follows with respect to the phrase "serious bodily injury," which is

4

arguably more nuanced and would be in greater need of definition than the phrase "bodily injury":

> Similarly, the District Court did not commit plain error in failing to define "serious bodily injury." The District Court was only required to include the core defense theories and the critical elements of the charged crimes in its instructions, *see United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225 (9th Cir. 2017) (finding error where district court omitted essential element of attempted illegal reentry), *Valencia-Cortez* does not cite any authority requiring the term to be defined and the District Court was required to define only those terms that do not fall "within the comprehension of an average juror." *United States v. Dixon*, 201 F.3d 1223, 1231 (9th Cir. 2000). "Whether a term in a jury instruction requires definition normally turns on whether it expresses a concept within the jury's ordinary experience." *United States v. Tirouda*, 394 F.3d 683, 688 (9th Cir. 2005). We are not convinced an average juror would not comprehend what "serious bodily injury" means or attach to it a definition meaningfully different than what Valencia-Cortez proposes.

Consistent with the Circuit's caselaw and the decision by the Ninth Circuit Jury Instructions Committee, the defense does not believe that an instruction defining "bodily injury" is required or appropriate in this case.

**C.    Unlike Bodily Injury, "Unlawful Force" is a Legal Term of Art that Should be Defined for the Jury.**

As set out in the parties' joint disputed jury instructions, the defense believes that a definition of unlawful force is appropriate.  Like "bodily injury," there is no Model Jury Instruction defining "unlawful force."  Unlike "bodily injury," however, the phrase

"unlawful force" is a legal term of art that is *outside* the average juror's ordinary experience and knowledge. While this definition was included in the filing on disputed instructions, it was included in the defense's proposed self-defense instruction and does not appear to have been the subject of any dispute between the parties. (*See* Dkt. 36 at p. 20.)

Specifically, the defense proposal included the following definition, a nearly identical version of which has been given in at least one other assault on a federal officer case that proceeded to trial in the Central District this year:

> Force is unlawful when (1) under the surrounding circumstances, an officer uses an amount or type of force that is more than reasonably necessary to effectuate a seizure, arrest, detention, or other lawful action; or (2) the officer was acting with the intent to retaliate, punish, or cause harm. You must evaluate the reasonableness of Ms. Trapp's belief based upon both what Ms. Trapp knew and what Ms. Trapp reasonably could have determined from the surrounding circumstances.

*See United States v. Isaias Lopez*, 2:25-CR-00705-MEMF, ECF No. 130 (Given Jury Instructions) (Jan, 26, 2026) at p. 16.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 23, 2026

By  */s/ James S. Threatt*
Gabriela Rivera
James S. Threatt
Deputy Federal Public Defender
Attorney for Jessica Elizabeth Trapp

6